```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
UNITED STATES OF AMERICA                 :
                                         :
            -v-                          :      22cr175 (DLC)
                                         :
ERIK MARTINEZ,                           :      OPINION AND ORDER
                                         :
                  Defendant.             :
                                         :
---------------------------------------- X
```

APPEARANCES:

For the United States of America:
Benjamin Anthony Gianforti
U.S. Attorney's Office, SDNY
300 Quarropas Street
White Plains, NY 10601

For the defendant:
Mark B. Gombiner
Federal Defenders of New York Inc. (NYC)
52 Duane Street
10th Floor
New York, NY 10007

DENISE COTE, District Judge:

Erik Martinez has moved to suppress all evidence obtained as a result of a search of his person on November 10, 2021. For the following reasons, the motion is denied.

## Background

On November 10, 2021, at 10:16 p.m., a Spanish-speaking man called 911 to report four people selling drugs inside an apartment building at 494 E. 139th Street. The caller stated that the men were armed, and that he had seen one draw a gun on

somebody.  The caller described the four men as Hispanic, and described the man who had drawn the gun as short, bald, and wearing a green jacket or hoodie and blue jeans.

At 10:20 p.m., a dispatcher put out a radio run stating that there was an armed Hispanic man at 494 E. 139th Street, and that there were three other Hispanic men inside the lobby selling drugs.  At the same time, the dispatcher published a job report, describing a short male with a bald head wearing a green jacket or hoodie and blue jeans.  A post-arrest report states that one officer spoke to the 911 caller before arriving on scene.

Between two and three minutes after the radio run, multiple police officers arrived on scene.  Martinez let them into the building.  The officers encountered four men in the building entrance, including Martinez.  Martinez was wearing a knit cap, blue jeans, red fanny pack, and a grey hoodie with an image of a cartoon dog on the front.  Post-arrest reports describe the other men as "black," "Hispanic," and "black Hispanic."

Two officers initially entered the building, and proceeded to walk past Martinez to address the three other men who were further from the building entrance.  The officers then frisked those men and searched their bags.  Another officer who entered the building searched Martinez, feeling a "hard firearm shaped object" in Martinez's fanny pack.  The officer then placed

Martinez in handcuffs, and opened the fanny pack, finding a pistol.  The officer later found a quantity of fentanyl and cocaine on Martinez's person.

On March 21, 2022, Martinez was indicted for one count of possession of narcotics with intent to distribute, one count of use of a firearm in relation to a drug trafficking crime, one count of possessing a firearm as a felon, and one count of possessing a defaced firearm.  Martinez was arraigned on March 25.  After arraignment, the Court issued a scheduling order setting a May 20 deadline for the defendant to submit any motion, and a June 21 date for a hearing on the motion.  The motion deadline was later extended to June 10, and the hearing adjourned to July 28.

On June 10, the defendant moved to suppress the results of the November 10, 2021 search of Martinez, arguing that the police lacked reasonable suspicion to conduct the search of Martinez because Martinez did not match the description provided on the 911 call.  The Government opposed the motion on June 29.

## Discussion

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  Under the Fourth Amendment, the Government must normally obtain a warrant before conducting a search.  Riley v. California, 573

U.S. 373, 382 (2014).  In some circumstances, however, no warrant is required.  Relevant here, a police officer may conduct "a Terry stop -- that is, a temporary detention of an individual" if the officer has "reasonable suspicion that the individual has engaged in or is about to engage in criminal activity."  United States v. Hawkins, 2022 WL 2251885, at *2 (2d Cir. June 23, 2022) (citation omitted).

Reasonable suspicion "must be established by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."  Id. (citation omitted).  It cannot be supported by "an inchoate and unparticularized suspicion or hunch."  Id. (quoting Terry v. Ohio, 392 U.S. 1, 21 (1968)).  Nevertheless, "the reasonable suspicion standard is not high," and requires "less than probable cause."  United States v. Patterson, 25 F.4th 123, 136 (2d Cir. 2022); Hawkins, 2022 WL 2251885, at *2.  Reasonable suspicion may be established from a report of criminal activity by a putative eyewitness.  See Patterson, 25 F.4th at 136.

During a Terry stop, "if the investigating officer has reason to believe that the detained individual is armed and dangerous, he may conduct a patdown search for concealed weapons."  United States v. Padilla, 548 F.3d 179, 187 (citing Terry, 392 U.S. at 23-27).  If the Terry stop uncovers probable cause for an arrest, the officer may conduct an arrest, and then

4

search the person pursuant to that arrest.  See Riley, 573 U.S. at 382-85 (2014).

The Government has established reasonable suspicion for the November 10, 2021 Terry stop, frisk, and resulting arrest and search.  The 911 dispatcher put out a radio run describing four men at the apartment building, one of whom was armed, and put out a job report describing the armed individual as a short bald Hispanic man in blue jeans and a green hoodie or jacket.  When the police arrived on scene minutes later they found four men, including the defendant.  The defendant substantially matched the description provided of the armed man.[1]  The defendant is a 5'3" bald Hispanic man, and was wearing blue jeans and a hoodie at the time of his arrest.  These facts are sufficient to establish reasonable suspicion.

The defendant argues that any reasonable suspicion was vitiated by mismatches between the dispatcher's descriptions and the officers' observations when arriving on scene.  The defendant states that the other men in the apartment building were Black rather than Hispanic, that the defendant's hoodie was

---

[1] Knowledge of the defendant's description may be imputed to the arresting officers, both because the description was published through the job report, and because an officer confirmed the report with the caller before the arrest.  See Patterson, 25 F.4th at 138.

5

gray instead of green, and that he was wearing a knit cap which would have obscured his baldness.

None of these facts vitiates reasonable suspicion. Post-arrest reports indicate that other men arrested on the scene were "black Hispanic." The photograph of the defendant at the time of arrest shows him wearing a knit cap that did not obscure the fact that he must have either been bald or had very closely cut hair. The only inconsistency between the officers' observations and the dispatch description was the color of the defendant's hoodie: grey, not green. Such minor discrepancies do not preclude reasonable suspicion. See United States v. Jackson, 652 F.2d 244, 247-49 (2d Cir. 1981) (description of a suspect supported reasonable suspicion even when it misstated the color of his jacket and underestimated his weight by 50 pounds).

The defendant also argues that the officers were intent on searching everyone in the building, regardless of reasonable suspicion. But reasonable suspicion is an "objective inquiry" that "disregards the officer's subjective motivation and asks instead whether a reasonable officer would suspect unlawful activity under the totality of the circumstances." United States v. Diaz, 802 F.3d 234, 239 (2d Cir. 2015). Accordingly, because a reasonable officer could have inferred that the

defendant had recently engaged in unlawful activity, the Terry stop and search of the defendant were lawful.

The defendant has requested a hearing, but has not identified any facts that are in dispute and that are material to a ruling on the motion. Accordingly, there is no reason to conduct a hearing. See United States v. Kirk Tang Yuk, 885 F.3d 57, 77 (2d Cir. 2018) (evidentiary hearing is required if the moving papers show that "contested issues of fact going to the validity of the search are in question.") (citation omitted).

## Conclusion

The defendant's June 10, 2022 motion to suppress is denied. The July 28 hearing is cancelled.

Dated:   New York, New York
         June 30, 2022

_____
DENISE COTE
United States District Judge

7